IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

|  |  |  |
|---|---|---|
| Vasilios Tombros<br>23 Sylvan Forest Drive<br>The Woodlands Texas 77381<br><br>          *Plaintiff*,<br>     *v.*<br><br>Cycloware, LLC<br>10411 Motor City Drive<br>Bethesda, Montgomery County, MD 20817,<br><br>*Serve*:  Roger C. Samek, Esquire<br>          15245 Shady Grove Road<br>          Suite 300-North Lobby<br>          Rockville, MD 20850,<br><br>     *and*<br><br>CWL Services LLC<br>10411 Motor City Drive<br>Bethesda, Montgomery County, MD 20817,<br><br>*Serve*:  Roger C. Samek, Esquire<br>          15245 Shady Grove Road<br>          Suite 300-North Lobby<br>          Rockville, MD 20850,<br><br>     *and*<br><br>Persona Doctors, LLC<br>1838 Greene Tree Road, Suite 320<br>Pikesville, Baltimore County, MD 21208,<br><br>*Serve*:  Roger C. Samek, Esquire<br>          15245 Shady Grove Road<br>          Suite 300-North Lobby<br>          Rockville, MD 20850,<br><br>     *and* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: _____<br><br>JURY TRIAL REQUESTED |

Persona Doctors-HQ, LLC                                   )
1838 Greene Tree Road, Suite 320                          )
Pikesville, Baltimore County, MD 21208,                  )
                                                          )
*Serve*:  Roger C. Samek, Esquire                         )
          15245 Shady Grove Road                          )
          Suite 300-North Lobby                           )
          Rockville, MD 20850,                            )
                                                          )
          *and*                                           )
                                                          )
Kavan Shaban                                              )
6111 Roseland Drive                                       )
Rockville, Montgomery County, MD 20852,                   )
                                                          )
                    *Defendants*.                         )
                                                          )

## COMPLAINT

Plaintiff Vasilios Tombros (hereinafter, "Plaintiff" or "Mr. Tombros") brings this action against Cycloware, LLC ("Defendant Cycloware"), Mr. Kavan Shaban ("Defendant Shaban"), CWL Services LLC ("Defendant CWL"), Persona Doctors, LLC, and Persona Doctors-HQ, LLC (collectively, "the Defendants")[1] to redress:

- the Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*; the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*; and the Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C.A. § 2000e *et seq.*;

---

[1]  The last three defendants are referred to collectively as the "Affiliated Defendants," and the last two alone as the "Persona Doctors Defendants."

- Defendant Cycloware's and/or its affiliated entities' creating, permitting, and failing to mitigate a hostile work environment; and

- Defendant Cycloware's and/or its affiliated entities' and Defendant Shaban's intentional infliction of emotional distress on Mr. Tombros.

In this suit, Mr. Tombros seeks to recover:

- unpaid overtime wages denied to him by the Defendants' willful violations of the FLSA and Maryland wage laws,

- pre- and post-judgment interest,

- liquidated damages under the FLSA,

- treble damages under the Maryland Wage Payment and Collection Law;

- damages for harassment and the existence of a hostile work environment based on Mr. Tombros' national origin;

- damages for intentional infliction of emotional distress on Mr. Tombros;

- attorney's fees,

- costs,

- equitable relief, and

- such other relief as the Court may deem just and proper.

## <u>JURISDICTION, VENUE & PARTIES</u>

1.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1331 (Federal Question) and § 1367 (Supplemental Jurisdiction).

2.     This Court has personal jurisdiction over Defendant Cycloware because that defendant is a company organized under the laws of the State of Maryland and has substantial, continuous, and systematic contacts with the State of Maryland.

3.      This Court has personal jurisdiction over Defendant CWL because that defendant is a company organized under the laws of the State of Maryland and has substantial, continuous, and systematic contacts with the State of Maryland.

4.      This Court has personal jurisdiction over Defendant Personal Doctors LLC because that defendant is a company organized under the laws of the State of Maryland and has substantial, continuous, and systematic contacts with the State of Maryland.

5.      This Court has personal jurisdiction over Defendant Personal Doctors-HQ, LLC because that defendant is a company organized under the laws of the State of Maryland and has substantial, continuous, and systematic contacts with the State of Maryland.

6.      This Court has personal jurisdiction over Defendant Shaban because he resides and does business in the State of Maryland.

7.      In addition, this Court has personal jurisdiction over each of the Defendants because their illegal actions that form the basis for this Complaint occurred in whole or in part in the State of Maryland.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant Cycloware, Defendant CWL, and Defendant Shaban reside, and in which the Persona Doctor Defendants have places of business. Also, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of the events or omissions giving rise to the Complaint occurred.

9.      Mr. Tombros is an individual currently residing in the State of Texas. At the time of the events that form the basis for this Complaint, prior to his wrongful termination by the

Defendants, Mr. Tombros resided in and was employed by the Defendants within the State of Maryland.

10.     Defendant Cycloware is a limited liability company organized under the laws of the State of Maryland. At all times relevant to this Complaint, Defendant Cycloware was a developer of highly customized software, including for the healthcare industry. At the time of this filing, Defendant Cycloware is not in good standing in the State of Maryland.

11.     Defendant CWL is a limited liability company organized under the laws of the State of Maryland. At the time of this filing, Defendant CWL is not in good standing in the State of Maryland.

12.     Defendant Persona Doctors, LLC and Defendant Persona Doctors-HQ, LLC each is a limited liability company organized under the laws of the State of Maryland. At all times relevant to this Complaint, one or both of the Persona Doctors Defendants operated medical practices focusing on weight loss, obesity, hormonal imbalances and related disorders. At the time of this filing, each of the Persona Doctors Defendants is not in good standing in the State of Maryland.

13.     Defendant Kavan Shaban is an individual residing in the State of Maryland. At all relevant times, Defendant Shaban had a significant ownership interest in Defendant Cycloware, exercised day-to-day control of the operations of Defendant Cycloware, and was involved in the supervision and payment of Defendant Cycloware's employees, in general, and Mr. Tombros, in particular.

14.     Defendant Shaban also is a founder and/or owner of each of the Affiliated Defendants.

15.     Defendant Cycloware and some or all of the Affiliated Defendants are operated together by Defendant Shaban without observing corporate formalities. For example, Mr. Shaban directed employees of Defendant Cycloware who were developing software for one of the Persona Doctors entities to work out of his personal residence. As another example, the nanny for Mr. Shaban's children was paid by checks drawn on the account of Defendant CWL and bearing the same street address as Defendant Cycloware, and she was provided with a car leased by Cycloware. Several other examples are described in the paragraphs below.

## FACTS

16.     By letter dated August 18, 2018, Mr. Tombros was offered "employment with Cycloware LLC, and its affiliated entities, for the position of Product Development Analyst."

17.     The offer letter did not expressly identify the "affiliated entities." However, Mr. Tombros understood that the position being offered to him would involve consulting on a fitness app that Defendant Cycloware and Defendant Shaban were planning in conjunction with the Persona Doctors Defendants, which are affiliated entities of Defendant Cycloware though common ownership and/or management and through shared services. Notably, the footer on the Persona Doctors website states: "Designed by Cycloware."

18.     Likewise, Defendant CWL is an affiliated entity of Defendant Cycloware though common ownership and/or management and through shared services.

19.     Therefore, on information and belief, the term "its affiliated entities" in the August 18, 2018 employment offer letter to Mr. Tombros refers collectively to the Affiliated Defendants. *See* note 1 above.

20.     Mr. Tombros' offer letter was on the letterhead of Defendant Cycloware and was signed by Defendant Shaban as "Executive Director." The letter stated that Mr. Tombros would "report directly to the Executive Director," *i.e.*, Defendant Shaban.

21.     Mr. Tombros' offer letter stated that he would be paid an hourly rate of $22.00 per hour for every hour worked, plus a "Base Stipend" of "$15,000, which will be paid to you as a salary" if Mr. Tombros worked a minimum of 40 hours per week.

22.     Next to the caption "Overtime Rate," Mr. Tombros' offer letter stated: "Excluded. Not Applicable Bonus-Eligible Management Employee."

23.     Mr. Tombros' offer letter identified the following "duties and responsibilities" for Mr. Tombros:

- Performing product research and development as instructed
- Preparing exhibits and presentation documents as necessary
- Assisting with paperwork for reporting and compliance as necessary
- Procuring vendors for specific projects as necessary
- Responding to requests for information as necessary
- Maintaining the highest level of discretion with confidential matters
- Maintaining excellent communication and organizational skills, as well as, problem solving, writing, editing and proofreading skills
- Keeping daily journals of work performed[.]

24.     As noted, Mr. Tombros understood that the position being offered to him would involve consulting on a fitness app that Defendant LLC and Defendant Shaban were planning in conjunction with the Persona Doctors Defendants.

25.     Mr. Tombros' employment background is in fitness and not in software development.

26.     Mr. Tombros accepted the position offered by "Cycloware LLC, and its affiliated entities" and began working on or about August 27, 2018.

27.     During Mr. Tombros' tenure with "Cycloware LLC, and its affiliated entities," work on the fitness app never began. Instead, Mr. Tombros was assigned duties as a personal assistant to Defendant Shaban. Later, Mr. Tombros was assigned duties relating to the renovation of Defendant Shaban's personal residence.

28.     During Mr. Tombros' tenure with the Defendants, he regularly worked at Defendant Shaban's personal residence and at the residence of Defendant Shaban's brother.

29.     During Mr. Tombros' tenure with the Defendants, he regularly worked more than 40 hours in a workweek and often worked as many as 80 hours in a workweek.

30.     Mr. Tombros is a U.S.-born son of a Greek immigrant and identifies as a Greek-American.

31.     During Mr. Tombros' tenure with the Defendants, Defendant Shaban addressed Mr. Tombros as a "lazy Greek," told Mr. Tombros that Greece is to blame for the collapse of the European economy, and said that the only thing Greeks are good for is making gyros and feta cheese.

32.     Subsequently, Defendant Shaban addressed Mr. Tombros as a "Turkish bastard." Mr. Tombros reminded Defendant Shaban that he (Mr. Tombros) is Greek, not Turkish. Defendant Shaban responded that the Greeks were raped by their Turkish occupiers during a 400-year long occupation, so Mr. Tombros is Turkish whether he likes it or not. Defendant Shaban also said that he would continue to refer to Mr. Tombros as a "Turk" whether Mr. Tombros liked it or not.

33.     Thereafter, Defendant Shaban incessantly referred to Mr. Tombros as a "Turk" on a daily basis.

34.     Some of Defendant Shaban's humiliation and harassment of Mr. Tombros took place in front of other employees.

35.     Defendant Shaban and Defendant Cycloware (of which Defendant Shaban was Executive Director and a principal owner) ignored Mr. Tombros' requests to desist from calling him a "Turk."

36.     Mr. Tombros was deeply humiliated by Defendant Shaban's addressing him as a "Turk" and a "Turkish bastard" and disparaging his national origin and heritage.

37.     In addition to disparaging Mr. Tombros' national origin and heritage, Defendant Shaban subjected Mr. Tombros to listening to Mr. Shaban's almost daily use of the words "nigger" and "nigga" to describe Mr. Tombros' African and African-American co-workers.

38.     On one occasion in January 2019, Defendant Shaban told Mr. Tombros (referring to a Nigerian-American co-worker), "Tomorrow, you and I are going to get rid of that n****." The next day, the Nigerian-American co-worker was fired. The U.S. Equal Employment Opportunity Commission ("EEOC") has opened an investigation of that incident.

39.     In March 2019, Defendant Shaban directed Mr. Tombros to write a schedule for the two nannies of Defendant Shaban's children. Before Mr. Tombros could accomplish that task, however, one of the nannies (an African-American female) was constructively terminated, prompting Defendant Shaban to refer to her as a "lazy n*****" and to say that he "wished he had never hired a black person," or words to that effect. The EEOC has opened an investigation of that incident also. (Mr. Tombros did not have authority to direct or supervise the two nannies.)

40.     Although Mr. Tombros is not black, the hostile work environment created by the repeated references to him as a "Turk" was exacerbated by Defendant Shaban's offensive comments to Mr. Tombros, and in Mr. Tombros' presence, about his black co-workers.

41.     On or about April 6, 2019, Defendant Shaban fired Mr. Tombros by text message for failing to complete the schedule for the two nannies, even though Defendant Shaban no longer had two nannies in his employ.

42.     Mr. Tombros' position with the Defendants did not have a primary duty that was management of the enterprise in which he was employed or of a customarily recognized department or subdivision thereof.

43.     Mr. Tombros' position with the Defendants did not require him to customarily and regularly direct the work of two or more other employees.

44.     Mr. Tombros' position with the Defendants did not provide him with the authority to hire or fire other employees.

45.     Mr. Tombros' position with the Defendants did not have a primary duty that was the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.

46.     Mr. Tombros' position with the Defendants did not have a primary duty that included the exercise of discretion and independent judgment with respect to matters of significance.

47.     Mr. Tombros' position with the Defendants was not as a computer systems analyst, computer programmer, software engineer or as another similarly skilled worker in the computer field.

48.     During Mr. Tombros' employment by the Defendants, he was not paid at least $27.63 per hour for every hour worked as would be required to be exempt as a Computer Employee.

49.     During Mr. Tombros' employment by the Defendants, he was not paid on a "salary basis" within the meaning of 29 C.F.R. Part 541. Specifically, Mr. Tombros did not regularly receive each pay period on a weekly, or less frequent basis, a predetermined amount greater than $455 per week constituting all or part of his compensation, which amount was not subject to reduction because of variations in the quality or quantity of the work performed. Instead, Mr. Tombros' pay was subject to reduction, and the Defendants did not establish regular paydays, as discussed below.

50.     Mr. Tombros' offer letter stated that payment of his "salary" was dependent on his working at least 40 hours in a workweek. Contrary to the "salary basis" requirements for exemption, the Defendants conditioned Mr. Tombros' "salary" on his working a minimum of 40 hours in a workweek, meaning that the "salary" was subject to reduction if Mr. Tombros did not work at least 40 hours in a workweek.

51.     During Mr. Tombros' employment by the Defendants, he did not have regular paydays. Instead, pay periods ranged from as few as four days to as many as twenty-one days.

52.     Mr. Tombros' paystub from Cycloware LLC indicates that he worked 109.50 hours during the pay period covering August 24, 2018 through September 10, 2018. This paystub reflects an 18-day pay period. In order to have worked 109.50 hours in 18 days, Mr. Tombros had to have worked more than 40 hours in at least one of the workweeks covered by the paystub.

53.     Mr. Tombros' paystub from Cycloware LLC indicates that he worked 193.50 hours during the pay period covering September 24, 2018 through October 10, 2018. This

paystub reflects a 17-day pay period. In order to have worked 193.50 hours in 17 days, Mr. Tombros had to have worked more than 40 hours in at least one of the workweeks covered by the paystub.

54.     Mr. Tombros' paystub from Cycloware LLC indicates that he worked 197.00 hours during the pay period covering October 11, 2018 through October 23, 2018. This paystub reflects a 13-day pay period. In order to have worked 197 hours in 13 days, Mr. Tombros had to have worked more than 40 hours in at least one of the workweeks covered by the paystub.

55.     The above paystubs are the only ones of which Mr. Tombros retained copies; however, other records of hours worked and payroll records that will be obtained in discovery likewise will show that Mr. Tombros was paid irregularly and that he worked overtime.

56.     Under the applicable regulations of the U.S. Department of Labor (29 C.F.R. Part 516), such records are required to be preserved by the employer for at least two years, and in some cases, three years, after the date when the last entry was made--in this case, after the date of Mr. Tombros' final paycheck.

## COUNT I
### (Fair Labor Standards Act—against all Defendants)

57.     Plaintiff incorporates by reference paragraphs 1 through 56 above as if stated fully herein.

58.     At all relevant times, Defendant Cycloware was Mr. Tombros' "employer" within the meaning of the FLSA.

59.     At all relevant times, Defendant Cycloware was an enterprise engaged in commerce or in the production of goods for commerce.

60.     At all relevant times, one or more of the Affiliated Defendants was Mr. Tombros' "employer" within the meaning of the FLSA.

61.     At all relevant times, one or more of the Affiliated Defendants was an enterprise engaged in commerce or in the production of goods for commerce.

62.     At all relevant times, Defendant Shaban was Mr. Tombros' "employer" within the meaning of the FLSA.

63.     At all relevant times, Defendant Shaban, through Cycloware LLC and/or one or more of the Affiliated Defendants, was an enterprise engaged in commerce or in the production of goods for commerce.

64.     At all relevant times, Defendant Shaban was a person acting directly or indirectly in the interest of an employer (Cycloware, LLC and/or one or more of the Affiliated Defendants) in relation to an employee (Mr. Tombros).

65.     At all relevant times, two or more of the Defendants were joint employers of Mr. Tombros within the meaning of the FLSA.

66.     At all relevant times, Mr. Tombros was an "employee" within the meaning of the FLSA.

67.     At all relevant times, Mr. Tombros was a non-exempt employee for purposes of sections 6 and 7 of the FLSA (29 U.S.C. §§ 206, 207) and 29 C.F.R. Part 541.

68.     As a non-exempt employee, Mr. Tombros was entitled to be paid not less than one and one-half times the regular rate at which he was employed for every hour worked in excess of 40 hours in a workweek.

69.     During Mr. Tombros' tenure with the Defendants, he regularly worked more than 40 hours in a workweek and often worked as many as 80 hours in a workweek.

70.     The Defendants did not pay Mr. Tombros the overtime premium to which he was entitled for his overtime work.

71.    Pursuant to section 16 of the FLSA (29 U.S.C. § 216), Mr. Tombros is entitled to receive approximately $17,000 -- possibly as much as $21,000 or more -- in unpaid overtime premiums. The exact amount due can only be determined after discovery of records of hours work and payroll records in the sole possession of one or more of the Defendants.

72.    Also, pursuant to section 16 of the FLSA (29 U.S.C. § 216), Mr. Tombros is entitled to receive an additional equal amount as liquidated damages.

73.    Also, pursuant to section 16 of the FLSA (29 U.S.C. § 216), Mr. Tombros is entitled to a reasonable attorney's fee to be paid by the defendant, and costs of this action.

## COUNT II
### (Maryland Wage and Hour Law—against all Defendants)

74.    Plaintiff incorporates by reference paragraphs 1 through 56 above as if stated fully herein.

75.    At all relevant times, Defendant Cycloware was Mr. Tombros' "employer" within the meaning of the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415.

76.    At all relevant times, one or more of the Affiliated Defendants was Mr. Tombros' "employer" within the meaning of the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415.

77.    At all relevant times, Defendant Shaban was Mr. Tombros' "employer" within the meaning of the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415.

78.    At all relevant times, two or more of the Defendants were joint employers of Mr. Tombros for purposes of the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415 and § 3-427.

79.     At all relevant times, Mr. Tombros was an "employee" covered by the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415 and § 3-427.

80.     Under the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415, Mr. Tombros was entitled to be paid not less than one and one-half times the usual hourly wage, computed in accordance with § 3-420, for every hour worked in excess of 40 hours in a workweek.

81.     During Mr. Tombros' tenure with the Defendants, he regularly worked more than 40 hours in a workweek and often worked as many as 80 hours in a workweek.

82.     The Defendants did not pay Mr. Tombros the overtime wages to which he was entitled for his overtime work.

83.     Pursuant to the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415 and § 3-427, Mr. Tombros is entitled to receive approximately $17,000 -- possibly as much as $21,000 or more -- in unpaid overtime wages. The exact amount due can only be determined after discovery of records of hours work and payroll records in the sole possession of one or more of the Defendants.

84.     Also, pursuant to the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-427, Mr. Tombros is entitled to receive an additional equal amount as liquidated damages.

85.     Also, pursuant to the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-427, Mr. Tombros is entitled to counsel fees and other costs.

## COUNT III
**(Maryland Wage Payment and Collection Law—against all Defendants)**

86.     Plaintiff incorporates by reference paragraphs 1 through 85 above as if stated fully herein.

87.     At all relevant times, the Defendants, individually and/or jointly, were Mr. Tombros' "employer" within the meaning of the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502.

88.     At all relevant times, Defendant Shaban was Mr. Tombros' "employer" within the meaning of the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502.

89.     At all relevant times, two or more of the Defendants were joint employers of Mr. Tombros for purposes of the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502.

90.     At all relevant times, Mr. Tombros was an "employee" covered by the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502.

91.     Under the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502, the Defendants were required to establish regular pay periods for Mr. Tombros.

92.     The Defendants did not establish regular pay periods for Mr. Tombros.

93.     Under the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502, Defendant Shaban was required to establish regular pay periods for Mr. Tombros.

94.     Defendant Shaban did not establish regular pay periods for Mr. Tombros.

95.     Under the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502, if the regular payday of an employee (Mr. Tombros) fell on a non-workday, the employer (each of the Defendants) was required to pay the employee on the preceding workday.

96.     The Defendants did not pay Mr. Tombros on the preceding workday when the regular payday fell on a non-workday.

97.     The Defendants did not give Mr. Tombros, at the time of hiring, notice of the regular paydays that the employer set as required by the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-504.

98.     More than two weeks have elapsed from the date on which the Defendants were required to have paid Mr. Tombros the overtime wages due him under the Fair Labor Standards Act (Count I, above) and/or the Maryland Wage and Hour Law (Count II, above).

99.     Pursuant to the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-507.2, Mr. Tombros is entitled to an amount not exceeding three times the unpaid overtime wages, and reasonable counsel fees and other costs.

## <u>COUNT IV</u>
### (Hostile Work Environment in Violation of the Civil Rights Act of 1964—against Defendants Cycloware & Shaban)

100.     Plaintiff incorporates by reference paragraphs 1 through 56 above as if stated fully herein.

101.     During his employment by Defendant Cycloware, Mr. Tombros was subjected to unwelcome harassment by Defendant Shaban based on a protected ground, *i.e.,* Mr. Tombros' national origin (Greek-American).

102.    In addition, during his employment by Defendant Cycloware, Mr. Tombros was subjected to unwelcome harassment by Defendant Shaban by being forced to listen to and tacitly acquiesce in Defendant Shaban's harassment of African and African-American employees.

103.    Defendant Shaban's harassment of Mr. Tombros was frequent, severe, and humiliating.

104.    Defendant Shaban's harassment of Mr. Tombros was sufficiently severe or pervasive to alter the conditions of Mr. Tombros' employment and create an abusive work environment.

105.    Defendant Shaban's harassment of Mr. Tombros is imputable to Mr. Tombros' employer (Defendant Cycloware) because Defendant Shaban was the "Executive Director" of Defendant Cycloware; thus, Defendant Cycloware was aware of Defendant Shaban's behavior. Mr. Tombros' pleas to Defendant Shaban to cease his harassment were effectively complaints to Defendant Cycloware, as there was no one above Defendant Shaban to whom Mr. Tombros could complain effectively.

106.    Defendant Cycloware took no steps in response to Mr. Tombros' pleas to prevent or mitigate Defendant Shaban's abusive behavior. To the contrary, Defendant Shaban escalated his harassment after Mr. Tombros complained.

107.    On September 18, 2019, Mr. Tombros filed a Charge of Discrimination under the Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C.A. § 2000e *et seq.*, with the EEOC against Defendant Cycloware and Defendant Shaban. The charge was docketed as case number 531-2019-03634.

108.    On September 27, 2019, EEOC posted a Closure Notice/Notice of Right to Sue on its online Portal. That notice purports to have been mailed to Mr. Tombros on September 18,

2019; however, it was not received by Mr. Tombros by mail and was not received by him at any time before it was posted to the online portal.

109.    Mr. Tombros is entitled to recover damages in an amount to be determined at trial as a result of Defendant Shaban's harassment and Defendant Cycloware's permitting a hostile work environment.

### COUNT V
### (Intentional Infliction of Emotional Distress—against all Defendants)

110.    Plaintiff incorporates by reference paragraphs 1 through 56 and 100 through 109 above as if stated fully herein.

111.    By repeatedly disparaging Mr. Tombros' national origin and heritage, humiliating Mr. Tombros based on his national origin and heritage, ignoring Mr. Tombros' pleas that the disparagement and humiliation stop, and escalating the disparagement and humiliation in response to Mr. Tombros' pleas, the Defendants engaged in conduct toward Mr. Tombros that was intentional or reckless and extreme and outrageous.

112.    The extreme and outrageous character of the Defendants' conduct arose, in part, from their abuse of their position in relation to Mr. Tombros (*i.e.*, they were his employers), which gave them actual authority over him and the power to affect his interests.

113.    The Defendants' wrongful conduct caused Mr. Tombros emotional distress that was severe.

114.    Mr. Tombros suffered cognizable damages as a result of the Defendants' extreme and outrageous conduct. In particular, the Defendants' harassment of Mr. Tombros exacerbated the symptoms of his Major Depressive Disorder, which pre-dated his employment with the Defendants, but which had been under control with medication prior to the harassment that Mr. Tombros experienced at the hands of the Defendants.

115.     Defendant Shaban's treatment of Mr. Tombros caused him to suffer from a lack of energy and motivation and from oversleeping as a result of the constant abuse and, later, his firing.

116.     Mr. Tombros is entitled to recover compensatory damages in an amount to be determined at trial as a result of the Defendants' intentional infliction of emotional distress on Mr. Tombros.

117.     In addition, Mr. Tombros is entitled to recover punitive damages in an amount to be determined at trial as a result of the Defendants' intentional infliction of emotional distress on Mr. Tombros.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Vasilios Tombros respectfully requests that this Court enter judgment against the Defendants providing the following relief:

A.     Overtime wages in an amount to be determined at trial;

B.     Treble damages pursuant to Maryland Wage Payment and Collection Law;

C.     In the alternative, an amount equal to the unpaid overtime wages as liquidated damages pursuant to the Fair Labor Standards Act;

D.     In the alternative, an amount equal to the unpaid overtime wages as liquidated damages pursuant to the Maryland Wage and Hour Law;

E.     Damages pursuant to the Civil Rights Act of 1964 in an amount to be determined at trial for Defendant Shaban's harassment of Mr. Tombros and Defendant Cycloware's permitting a hostile work environment to exist for Mr. Tombros;

F.     Compensatory damages in an amount to be determined at trial for the Defendants' intentional infliction of emotional distress on Mr. Tombros;

G.      Punitive damages in an amount to be determined at trial for the Defendants' intentional infliction of emotional distress on Mr. Tombros;

H.      An award of pre- and post-judgment interest, costs and attorney fees; and

I.      Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury in this action.

## VERIFICATION

I, Vasilios Tombros, declare verify under penalty of perjury that the foregoing is true and correct.

Executed on December __, 2019.

_____

G.   Punitive damages in an amount to be determined at trial for the Defendants' intentional infliction of emotional distress on Mr. Tombros;

H.   An award of pre- and post-judgment interest, costs and attorney fees; and

I.   Such other relief as this Court shall deem just and proper.


## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury in this action.


## VERIFICATION

I, Vasilios Tombros, declare verify under penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2019.

December 12, 2019                    Respectfully submitted,


                                    By:  /s/ Shlomo D. Katz
                                        Shlomo D. Katz (BAR NO. 22304)
                                        BROWN RUDNICK LLP
                                        601 13th Street, N.W., Suite 600
                                        Washington, DC  20005
                                        Telephone:  (202) 536-1753
                                        Facsimile:  (617) 289-0775
                                        SKatz@brownrudnick.com

                                        Alex Fraser (BAR NO. 20607)
                                        BROWN RUDNICK LLP
                                        7 Times Square
                                        New York, NY 10036
                                        Telephone:  (212) 209-4829
                                        Facsimile:  (212) 209-4801
                                        AFraser@brownrudnick.com

                                        *Attorneys for Plaintiff*