IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VASILOS TOMBROS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:19-cv-03548-PX |
| CYCLOWARE, LLC, *et al.*, | * | |
| Defendants. | * | |

*****

### MEMORANDUM OPINION

Pending in this employment dispute is a motion to dismiss filed by Defendants, CWL Services LLC, Persona Doctors, LLC, Persona Doctors-HQ, LLC and Kavan Shaban. ECF No. 15. The issues are fully briefed and a hearing is not necessary. *See* Loc. R. 105.6. For the following reasons, the motion is granted in part and denied in part.

**I.     Background**

The Court accepts the Complaint facts as true and in the light most favorable to Tombros. On August 18, 2018, Cycloware, LLC and "its affiliated entities" offered Tombros a position as a Product Development Analyst. ECF No. 1 at ¶ 16. Defendant Kevan Shaban ("Shaban") retains significant ownership interest in Cycloware and exercises day-to-day control of its operations, to include paying its employees. *Id.* ¶ 13. Shaban also founded and owns several "affiliated entities" named as Defendants -- CWL and Personal Doctors, LLC, and Personas Doctors-HQ, LCC. *Id.* ¶ 14. Shaban operated the companies "without observing corporate formalities." *Id.* ¶ 15. For example, Shaban allowed an employee of Cycloware to work out of Shaban's home on a project developing software for one of the Persona Doctors defendants. *Id.*

Shaban also paid his nanny out of the CWL bank account which bears the same street address as Cycloware.  The nanny was also given a car leased by Cycloware.  *Id.*

Tombros understood that his position entailed consulting on a "fitness app" that Defendant Cycloware and Shaban were planning to launch for the Persona Doctors defendants.  ECF No. 1 ¶ 17.  The offer of employment letter identified Shaban as the Executive Director of Cycloware and as the individual who would act as Tombros' direct supervisor.  *Id.* ¶ 20.  The employment offer also identified Tombros as an "Excluded[,] Not Applicable Bonus-Eligible Management Employee."  *Id.* ¶ 22.  Tombros would be paid $22 per hour plus a "[b]ase [s]tipend" of $15,000 if he worked a minimum of 40 hours per week.  *Id.* ¶ 21.  The letter further described the position to include such duties as "performing product research and development as instructed," and other administrative and supportive tasks.  *Id.* ¶ 23.

Although hired to work on a fitness app, Tombros actually served as Shaban's personal assistant.  ECF No. 1 ¶ 27.  Tombros took all direction from Shaban; Tombros did not exercise any managerial authority, discretion, or independent judgment in his performing his job.  Nor did he work on or with computers.  *Id.* ¶¶ 42-45, 47.  Tombros worked more than 40 hours per week and was paid by checks issued from Cycloware LLC.  *Id.* ¶ 52-54.

Throughout Tombros' employment, Shaban often made derisive comments about Tombros' Greek heritage.  *Id.* ¶ 34.  Shaban called Tombros a "lazy Greek," and a "Turkish bastard," because, according to Shaban, the Turks raped the Greeks during a 400-year occupation so Tombros was a "Turk" whether he liked it or not.  *Id.* ¶ 30-33.  Shaban also referred to black employees as "nigger" or "nigga" in Tombros' presence.  *Id.* ¶ 37-39.

On April 6, 2019, Shaban fired Tombros via text message because Tombros had not completed the schedule for Shaban's nannies.  ECF No. 1 ¶ 41.  Tombros thereafter filed suit in

this Court, alleging wage and hour violations under the FLSA, 29 U.S.C. § 206 et seq., (Count I) and the state companion provisions, the Maryland Wage and Hour Law, MD Code, Lab. & Empl. § 3-401 et seq. (Count II) and Maryland Wage Payment and Collection Law, MD Code, Lab. & Empl. § 3-501 et seq. (Count III). Tombros also brings a hostile work environment claim against Shaban and Cycloware, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000 et seq. (Count IV), and a common law claim of intentional infliction of emotional distress. (Count V).

Defendants move to dismiss Counts I through III, the wage and hour claims, as to all defendants but Cycloware, contending that none were "employers" under the meaning of the relevant statutes. Additionally, Shaban moves to dismiss Count IV as to him, asserting that he does not meet the definition of an employer under Title VII. Finally, as to Count V, Defendants contend that the claim fails as a matter of law. The Court turns to each of the arguments below.

## II.    Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). A complaint need only satisfy the standard of Rule 8(a), requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, the Complaint must make some factual showing "rather than a blanket assertion of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). A

complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). In other words, the Complaint must set out facts that render the plaintiff's claims facially plausible or permit the reasonable inference that the defendant is liable for the alleged violations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### III. Analysis

#### 1. Wage and Hour Claims (Counts I, II, III)

Defendants raise a singular defect in the Complaint as to the federal and state wage claims—that no defendant other than Cycloware is Tombros' employer. Accordingly, this contention turns on whether entities may be considered "joint employers" under the FLSA and companion state claims. *See also Alvarez-Soto v. B. Frank Joy, LLC*, 258 F.Supp.3d 615, 631 (D. Md. 2017); *Newell v. Runnels*, 407 Md. 578, 649-50 (2009); Md. Lab & Empl. Code Ann. § 3-401(b) (definition of employer). For purposes of these wage and hour laws, an individual may be employed by multiple entities, or "joint employers," at a given time. *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 688 (D. Md. 2010); *Schultz*, 466 F.3d 298 at 306.

In determining whether a joint employment relationship exists, the court must consider the "real economic relationship" between the putative joint employers. *See, e.g., Newell*, 407 Md. 578 at 650; *Cf. Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011) (quoting *Schultz*, 466 F.3d at 304 (4th Cir. 2006)). The Fourth Circuit Court of Appeals has identified six non-exhaustive factors for the court's consideration: (1) the shared control or supervision of the employee directly or indirectly, (2) the power to hire and fire employees, (3) degree of permanency and duration of the joint relationship, (4) whether through shared

management one joint employer controls the other, (5) whether work is performed on premises owned or controlled by one or more putative joint employers, and (6) the extent of shared responsibilities for payroll, facilities, equipment, tools and materials necessary to complete the work.  *Salinas v. Com. Interiors, Inc.,* 848 F.3d 125, 141 (4th Circ. 2017).  No one factor predominates; they must be considered together and in totality.  *See id.* at 142; *Hall*, 846 F.3d 757 at 770.  As a fact intensive inquiry, the question of joint employment is often best left for resolution after discovery.  *West v. J.O. Stevenson, Inc.*, 164 F.Supp.3d 751, 764 (E.D.N.C. 2016); *see Hall v. DIRECTV, LLC,* 846 F.3d 757, 771 (4th Cir. 2017) (noting difficulty evaluating joint employment when pertinent facts remain largely under defendants' control).

Reading the Complaint as true and most favorably to Tombros, sufficient facts make plausible that Defendants acted as joint employers.  *See Casorio-Sahn v. Pat's Select Pizza & Grill, LLC*, No. RDB-18-0851, 2019 WL 1171266 at *4 (D. Md., Mar. 13, 2019).  All corporate defendants are "affiliated" with Cycloware through "common ownership and/or management and through shared services."  ECF No. 1 ¶ 13-14, 17.  Shaban retained "significant ownership interest in Defendant Cycloware" and is a "founder and/or owner" of the other defendants.  *Id.* ¶ 13-15.  Shaban also extended Tombros' employment offer on behalf of Cycloware and "its affiliated entities," *id.* ¶ 16, 20, and conveyed to Tombros that he would work on a fitness app "[t]hat Defendant Cycloware and Defendant Shaban were planning in conjunction with the Persona Doctors Defendants."  *Id.* ¶ 17, 24.

At this stage, the Complaint makes plausible that the Defendants shared the power to control the terms of Tombros' employment, and that Tombros performed his work on their behalf and at premises controlled by them.  *Salinas,* 848 F.3d 125 at 141.  This joint relationship survives challenge, especially when considering the facts as to Defendants' corporate structure,

division of management responsibilities, and ownership of real and intangible corporate property are known best by Defendants, not Tombros. ECF No. 15-1 at 11-12. The motion to dismiss is denied as to Counts I, II and III.

### 2. Shaban as a Defendant in Title VII Claim (Count IV)

As to the Title VII hostile work environment claim, Shaban solely contends that he is not liable as an "employer" under Title VII. An "employer" for purposes of Title VII is a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). *See Doe v. Chesapeake Medical Solutions, LLC*, 2019 WL 6497962 *6 (D.Md. Dec. 2, 2019). Nothing in the Complaint establishes that Shaban meets this definition. Thus, Shaban's motion to dismiss as to the Title VII claim is granted. However, because Tombros has not previously sought leave to amend the Complaint, the Court dismisses the claim without prejudice. Tombros may amend the Complaint to cure the deficiencies, if possible.[1]

### 3. Intentional Infliction of Emotional Distress (Count V)

Defendants lastly contend that Tombros has failed to plead sufficient facts to sustain his Intentional Infliction of Emotional Distress (IIED) claim. Again, the Court agrees with Defendants. IIED claims are reserved for those rare circumstances where a defendant's extreme and outrageous acts cause the plaintiff severe emotional distress. *See Tavakoli-Nouri v. State*, 139 Md. App. 716, 728 (2001); *see also Savage v. Mayor of Salisbury*, No. CCB-08-3200, 2010 WL 3038953, at *6 (D. Md. July 30, 2010) (IIED actionable "only for opprobrious behavior that includes truly outrageous conduct.") (citation omitted). Accordingly, the plaintiff must aver sufficient facts to make plausible that "he suffered a *severely* disabling emotional response to the

---

[1] The Complaint does not expressly aver employment structure and size for any defendant, however only Shaban seeks dismissal on this ground. The Court thus confines its decision to Shaban.

defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it." *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (Md. Ct. Spec. App. 2000) (internal marks and citation omitted) (emphasis in original).  This standard sets a high bar.  *See B.N.S. by Stuart v. Brito*, No. ELH-17-2670, 2018 WL 5830565, at *10 (D. Md. Nov. 6, 2018).  "[C]onclusory statements of emotional distress" will not suffice.  *Karn v. PTS of Am., LLC,* No. GJH-16-3261, 2017 WL 4162251, at *5 (D. Md. Sept. 19, 2017).

Viewing the Complaint facts as true and most favorably to Tombros, Shaban's harassment aggravated Tombros' depression, which led to Tombros' suffering from diminished energy, motivation, and sleep disturbance.  ECF No. 1 ¶ 114-15.  Although Shaban's abuse has aggravated Tombros' mental health in significant and meaningful ways, the effects are simply not sufficiently severe or extraordinary to sustain an IIED claim.  The Court grants Defendants' motion.

The Court also dismisses the claim with prejudice.  Tombros has pleaded the extent of his own emotional injuries of which he knows best.  And if, as pleaded, the extent of his injuries is insufficient, amendment of the claim would serve no further purpose.

**IV.    Conclusion**

Defendants' motion to dismiss is granted in part and denied in part.  The Title VII claim is dismissed as to Shaban without prejudice and the IIED claim as to all Defendants is dismissed with prejudice.  The motion is otherwise denied.

A separate Order follows.

8/17/2020                                                        /S/
Date                                                                Paula Xinis
                                                                       United States District Judge